Pamela K. BUCHANAN, Relator.

v.

Honorable Alan MAYFIELD, Judge, 74th
District Court, McLennan County,
Texas, Respondent.

No. 10–95–313–CV.

Court of Appeals of Texas,
Waco.

June 12, 1996.

**136**

Matthew C. Witt, Cowles & Thompson, Dallas, for relator.

Alan Mayfield, Waco, for respondent.

Thomas J. Blankenship, Waco, for real parties in interest.

Before CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

This is an original mandamus proceeding instituted by Pamela K. Buchanan, relator, against respondent, Alan Mayfield, Judge of the 74th District Court in McLennan County. Buchanan seeks a writ of mandamus directing Judge Mayfield to rescind his order of October 23, 1995, and further directing Judge Mayfield to allow Buchanan to obtain from the real party in interest, W. Russell Ross, D.D.S., the name of a patient (hereafter referred to anonymously as "Jane Doe") who allegedly used a "spit cup" from which Buchanan later drank. We conditionally grant the writ.

### I. PROCEDURAL AND FACTUAL BACKGROUND

According to Buchanan, she visited Dr. Ross, a dentist, on October 7, 1993, to have her teeth cleaned and her braces removed. During the course of her visit Buchanan was attended to in two different examination rooms. As a result of her changing rooms, Buchanan mistakenly drank from a cup that, according to Buchanan, was used by Jane Doe. Dr. Ross denies that Buchanan used any cup but her own.

Buchanan sued Dr. Ross under a vicarious liability theory for the allegedly negligent acts of his assistant in failing to make certain that Buchanan did not drink from anyone else's cup. She also alleged that Dr. Ross was directly negligent in failing to have a policy in place to ensure that patients do not drink from another patient's cup, in hiring his assistant, in failing to discipline his assistant for previous careless behavior, and in failing to provide Buchanan with promised information apparently on the possibility of contracting the human immunodeficiency virus (HIV), the virus which causes AIDS, by drinking the saliva and blood of a person who has tested negative for the presence of HIV in his system.[1]

Buchanan's petition before the trial court demonstrates that she is primarily concerned

---

1. We express no opinion on whether Buchanan sued Dr. Ross for any intentional torts committed either by him or an employee.

with the possibility of having contracted HIV. The record indicates that Jane Doe has twice been tested for HIV and Hepatitis B, on October 12, 1993, and on August 11, 1995. She tested negative each time.

## II. Buchanan's Waiver Argument

Buchanan first argues that Dr. Ross waived his objection to her discovery request. She contends that she propounded two different interrogatories to Dr. Ross on the identity of Jane Doe but Dr. Ross only claimed the physician-patient privilege in response to one of them, thereby waiving the privilege. The two interrogatories along with Dr. Ross's answers are indicated below.

### Interrogatory Number Eight

Provide the name, address, and telephone number of the patient that you had tested for the HIV virus and Hepatitis B in conjunction with Plaintiff's episode at your offices which occurred on October 7, 1993. Explain why you believed such testing to be necessary.

> Answer: Defendant objects to Interrogatory No. 8 for the reason that it seeks confidential information and such a request violates the Physician/Patient Privilege. Without waiving that objection, the testing was done to ease any concerns on the part of Pamela Buchanan, i.e. to show that even if we assumed she had drunk from someone else's cup, she hadn't been exposed to any communicable diseases.

### Interrogatory Number Ten

Provide the names, addresses, and telephone numbers of all persons with knowledge of facts relevant to this cause. Provide a brief statement with regard to each of these persons giving what knowledge that person has.

> Answer: Defendant objects to Interrogatory No. 10 to the extent it requires this Defendant to state with specificity the particular knowledge each person possesses and any opinions of the person inquired about in Interrogatory No. 10. Such a request exceeds the scope of discovery allowed for and permissible under the Texas Rules of Civil Procedure. Moreover, such request calls for the production of information protected by the work product privilege, witness statements privilege, party communications privilege, post-accident investigation privilege and attorney-client privilege. . . .

Dr. Ross in his answer to Interrogatory Number 10 then listed the requested information on a number of people who might have information about Buchanan's complaint, but information on Jane Doe was not included.

The failure to timely object to interrogatories requesting privileged information constitutes a waiver of the privilege. *Hobson v. Moore*, 734 S.W.2d 340, 341 (Tex. 1987) (orig. proceeding). Buchanan contends that Dr. Ross's failure to raise the physician-patient privilege in his answer to Interrogatory Number 10 waived the privilege. We disagree. Without question, Dr. Ross's raising of the privilege in response to the specific inquiry into the identity of Jane Doe in Interrogatory Number 8 was sufficient to raise and preserve the complaint. Dr. Ross's failure to again raise the privilege in response to the general inquiry in Interrogatory Number 10 into the identity of people who had knowledge of the cause did not eviscerate the effect of Dr. Ross's raising of the privilege in his answer to Interrogatory Number 8. Buchanan's waiver argument is without merit.

## III. Whether a Dentist-Patient Privilege Exists Under Rule of Civil Evidence 509

The issue to be addressed at this juncture is whether Dr. Ross may properly invoke the physician-patient privilege on the behalf of Jane Doe to prevent the disclosure of her identity. Rule 509 of the Rules of Civil Evidence provides that "[c]onfidential communications between a physician and a patient, relative to or in connection with any professional services rendered by a physician to the patient are privileged and may not be disclosed." Tex.R. Civ. Evid. 509(b)(1). Rule 509(c)(2) allows physicians to invoke the privilege on the behalf of their patients.

TEX.R. CIV. EVID. 509(c)(2). The parties agree that Dr. Ross invoked the privilege on the behalf of Jane Doe and that the identity of Jane Doe would be confidential information under the rule. *See* TEX.R. CIV. EVID. 509(b)(2). The only disputed question is whether Dr. Ross, as a dentist, is entitled to this privilege expressly reserved by the rule to "physicians."

■ A physician is defined in rule 509 as "a person licensed to practice medicine in any state or nation, or reasonably believed by the patient so to be." TEX.R. CIV. EVID. 509(a)(2). The Medical Practice Act is the statutory scheme that governs the licensing of physicians in Texas. *See* TEX.REV.CIV. STAT. ANN. art. 4495b (Vernon Pamph.1996). Dentists who confine their practice strictly to dentistry are specifically excluded from application of the Medical Practice Act. *Id.* at § 3.06(b)(1). Dr. Ross is licensed to practice dentistry under the Dental Practice Act, and the record indicates that Dr. Ross's practice is exclusively in dentistry. *See* TEX.REV.CIV. STAT. ANN. arts. 4543–4551o (Vernon 1976 & Pamph.1996). Therefore, Dr. Ross is not a physician under Texas law, and consequently, he may not claim a privilege under rule 509 to keep any communications between him and his patients confidential.

### a. Dr. Ross's Performance of Physician–Like Procedures

Nevertheless, Dr. Ross argues that he should be considered a physician for rule 509 purposes because (1) he, while not a medical doctor, is a doctor of dental surgery, (2) he can prescribe drugs, and (3) he can perform oral surgery. All of these functions are properly within the province of dentistry. *See* TEX.REV.CIV. STAT. ANN. arts. 4551a(1), 4551a(7) (Vernon Pamph.1996). The fact that these functions may be common to both dentists and medical doctors, however, does not make Dr. Ross a physician. Dr. Ross's arguments that he should be considered a physician under rule 509 because he performs some of the functions of a medical doctor are without merit.

### b. A Dentist's Obligations Under the Dental Practice Act to Maintain Confidences

■ Dr. Ross next argues that he is obliged by article 4549–2 of the Dental Practice Act not to disclose the identity of Jane Doe. *Id.* art. 4549–2. Article 4549–2 reads:

> Records of the diagnosis made and the treatment performed for and on a dental patient shall be the property of the dentist who performs the dental service and may not be sold, pledged as collateral, or otherwise transferred to any person other than the patient unless the other person is a dentist licensed by the Board and the transfer is made in compliance with rules relating to the transfer of records as may be adopted by the Board. Nothing herein shall prevent the voluntary submission of records to insurance companies for the purpose of determining benefits.

*Id.* Buchanan, however, is not seeking the "[r]ecords of the diagnosis made and the treatment performed for and on" Jane Doe. Buchanan is seeking only the identity of Jane Doe so that she may depose her on what knowledge she may possess in the cause. Dr. Ross's argument that article 4549–2 applies is without merit.

### c. Dr. Ross's Other Statutory Arguments

Dr. Ross makes several arguments based upon three different statutory units of the Health & Safety Code. The first argument is based upon chapter 162 of the Code which provides for the confidentiality of blood donors. *See* TEX. HEALTH & SAFETY CODE ANN. § 162.001–.015 (Vernon 1992 & Supp.1996). Chapter 162 requires blood banks to test each potential donor for the presence of HIV, AIDS, hepatitis, and other infectious diseases. *See* TEX. HEALTH & SAFETY CODE ANN. § 162.002(a) (Vernon 1992). The test results, however, are confidential, and they, along with the identity of the blood donor, generally cannot be disclosed. *See id.* §§ 162.004–.011. His second argument is derived from subchapter F of the Communicable Disease Prevention and Control Act. *See* TEX. HEALTH & SAFETY CODE ANN. § 81.101–.109 (Vernon 1992 & Supp.1996). Subchapter F provides for instances when one person may

compel another person to undergo testing for the presence of HIV in that person's system. *See id.* And the third argument is based upon subchapter C of the Communicable Disease Prevention and Control Act which requires dentists, physicians, and veterinarians to report to designated authorities their suspicions that a patient might have a communicable disease, such as AIDS. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 81.041–.052 (Vernon 1992 & Supp.1996). Both subchapters F and C have confidentiality provisions. *See id.* §§ 81.046, .103. We disagree with each of Dr. Ross's arguments.

### 1. CHAPTER 162 OF THE HEALTH & SAFETY CODE

■ Dr. Ross argues that if chapter 162 of the Health & Safety Code allows a blood donor to keep his name confidential then Jane Doe should be allowed to keep her name confidential as well. The flaw in Dr. Ross's argument is that blood donors arrive at the blood bank under a cloak of confidentiality. *See* TEX. HEALTH & SAFETY CODE ANN. § 162.003. This cloak may only be pierced in limited situations and only to the extent provided by chapter 162. *Id.* As we held above, a dental patient is not covered by the same cloak of confidentiality when he walks into his dentist's office. Therefore, the confidentiality provisions of chapter 162, designed to protect as much as possible the identity and other information provided to the blood bank by the blood donor, is inapplicable to the case before us where the dental patient cannot expect the same privilege of confidentiality. Dr. Ross's reliance upon

chapter 162 is misplaced, and therefore his argument in this vein is without merit.[2]

### 2. SUBCHAPTER F OF THE COMMUNICABLE DISEASE PREVENTION AND CONTROL ACT

Subchapter F of the Communicable Disease Prevention and Control Act is also inapposite to the case before us. Section 81.102(a)(5)(D) of the Act appears to allow any person at any time in any situation to require another person to undergo an HIV-test whenever the person is accidentally exposed to the blood or other bodily fluids of another, notwithstanding any suspicion that the other person is infected with HIV. TEX. HEALTH & SAFETY CODE ANN. § 81.102(a)(5)(D) (Vernon Supp.1996).[3] Dr. Ross argues that when section 81.102(a)(5)(D) is invoked, the person requesting the test is entitled only to the test results and not to the identity of the person being tested. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 81.102(c), .107 (Vernon 1992). Dr. Ross concludes, therefore, that Buchanan is entitled only to Jane Doe's test results and not Jane Doe's identity.

■ We disagree. Section 81.102(a)(5)(D) presumes that the person requesting the test already knows the identity of the person to whose bodily fluids he has been exposed. *See* TEX. HEALTH & SAFETY CODE ANN. § 81.102(a)(5)(D). Subchapter F provides a mechanism by which the person who fears contagion may require the other to undergo a test to determine whether that person is infected with HIV. *Id.* There is a reason that identity is mentioned only rarely throughout

---

2. Interestingly, chapter 162 of the Health & Safety Code provides for the taking of discovery from these anonymous donors in a manner that preserves the donors' anonymity. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 162.010(e), .011(e) (Vernon 1992).

3. Section 81.102(a)(5)(D) is worded as follows: "A person may not require another person to undergo a medical procedure or test designed to determine or help determine if a person has AIDS or HIV infection, antibodies to HIV, or infection with any other probable causative agent of AIDS unless ... the medical procedure or test is necessary ... to manage accidental exposure to blood or other bodily fluids, but only if the test is conducted under written infectious disease control protocols adopted by the health care

agency or facility[.]" TEX. HEALTH & SAFETY CODE ANN. § 81.102(a)(5)(D) (Vernon Supp.1996). The wording of section 81.102(a)(5)(D) suggests that its scope may not be as wide-reaching as Dr. Ross argues but may be restricted to situations where a management system is in place at medical facilities where the accidental exposure to another's bodily fluids is likely. *See id.; see also* Julie Edwards, Note, *Controlling the Epidemic: The Texas AIDS Reporting Statute,* 41 BAYLOR L. REV. 399, 408–09 nn. 68–69 (1989). For the purposes of this opinion, we will assume, without deciding, that section 81.102(a)(5)(D) applies to everyone who, in any situation, may have accidentally been exposed to the bodily fluids of another.

subchapter F, and that is because subchapter F addresses situations where the person fearing contagion already knows the identity of the person to whose bodily fluids he has been exposed. That person is only concerned thereafter with whether the other person was infected with HIV. This is the reason subchapter F provides that the identifying information of the test results, although not the test results themselves, will be destroyed only *after* the test results have been disclosed *to the person requesting the test. See id.* § 81.107(b)(2).

Of course, we can envision a scenario, such as the one before us, where the identity of the other person to be tested is not known to the person who fears contagion and the person fearing contagion must then go through an intermediary, such as Dr. Ross, to learn the identity of the person to be tested. But the fact that subchapter F provides only for the disclosure of HIV-test results and not the identity of the person being tested does not mean the intermediary can keep the identity of the person to be tested a secret. *See id.* Under the facts in this case, Dr. Ross has denied that Buchanan drank from Jane Doe's cup. Jane Doe possesses information directly relevant to this issue, and subchapter F does not operate to allow Dr. Ross to keep Jane Doe's identity from Buchanan. Moreover, we are aware of no other relationship between Dr. Ross and Jane Doe or obligation imposed upon Dr. Ross that will serve to keep the identifying information confidential, and neither has Dr. Ross plead any. Dr. Ross's argument under subchapter F of the Communicable Disease Prevention and Control act is without merit.

### 3. SUBCHAPTER C OF THE COMMUNICABLE DISEASE PREVENTION AND CONTROL ACT

■ In his third statutory argument Dr. Ross contends that subchapter C of the Communicable Disease Prevention and Control Act can be read to preclude him from disclosing Jane Doe's identity. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 81.041–.052. Subchapter C, however, has no application to this case. Subchapter C lists reporting requirements for dentists, physicians, and veterinarians when they either know or suspect that a patient (or an animal in the case of a veterinarian) has a "reportable disease," as determined by the Texas Board of Health. TEX. HEALTH & SAFETY CODE ANN. §§ 81.041–.042 (Vernon 1992). The reports are confidential and the information contained therein, including any identifying information, may only be disclosed in a few limited circumstances and then only to a limited list of people. TEX. HEALTH & SAFETY CODE ANN. § 81.046 (Vernon 1992 & Supp.1996). There is no particularized suspicion on the part of Buchanan that Jane Doe is infected with HIV. Indeed, Jane Doe has twice tested negative for the presence of HIV in her body. The obligations of dentists, physicians, and veterinarians to make confidential reports on their patients (or animals) who either have or are suspected of having certain communicable diseases are simply irrelevant to the case before us where a third party is trying to learn whether a dentist's patient may be infected with a contagious disease. Dr. Ross's argument based upon subchapter C of the Communicable Disease Prevention and Control Act is without merit.

### d. Public Policy Considerations

Dr. Ross argues at length that there is no meaningful distinction between a dentist and a physician for rule 509 purposes because both are in the profession of healing and the purpose of rule 509 is to encourage patients to be completely open in discussing their medical conditions with their physicians so that they may be properly treated. *See* 8 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2380a (1961). Our holding, however, is demanded by the wording of rule 509 and the statutory provisions of the Medical Practice Act and the Dental Practice Act. Dr. Ross may be correct in his assessment of the public policy considerations at issue, but his recourse is not with this court but with the Supreme Court as the author of the Texas Rules of Civil Evidence or with the legislature. His public policy argument is misdirected

### e. Refusal to Disclose in the Interest of Justice

■ As a final argument, Dr. Ross contends the trial court did not err in refusing to

order Dr. Ross to disclose Jane Doe's identity because his decision was made in the interest of justice. Rule of Civil Procedure 166b(5) provides the rule on protective orders for discovery:

> On motion specifying the grounds and made by any person against or from whom discovery is sought under these rules, the court may make any order in the interest of justice necessary to protect the movant from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights. Motions or responses made under this rule may have exhibits attached including affidavits, discovery pleadings, or any other documents. Specifically, the court's authority as to such orders extends to, although it is not necessarily limited by, any of the following:
>
>> a. ordering that requested discovery not be sought in whole or in part, or that the extent or subject matter of discovery be limited, or that it not be undertaken at the time or place specified.
>>
>> b. ordering that the discovery be undertaken only by such method or upon such terms and conditions or at the time and place directed by the court.
>>
>> c. ordering that for good cause shown results of discovery be sealed or otherwise adequately protected, that its distribution be limited, or that its disclosure be restricted. . . .

Tex.R. Civ. Proc. 166b(5). We decline to conclude that the trial court was within its discretion, "in the interest of justice," to completely preclude Buchanan from learning the identity of Jane Doe. If the trial court should hereafter decide to issue a protective order to prevent Buchanan from disclosing Jane Doe's identity to anyone else, rule 166b(5) provides him that authority. But the rule does not allow the trial court to keep Jane Doe's identity from Buchanan. Dr. Ross's argument is without merit.

## IV. Whether Mandamus Relief is Proper

■ We will now address the question of whether mandamus will properly lie in this case. Mandamus will issue only to correct a clear abuse of discretion for which there is no other adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding). An appeal will not be adequate where a party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's erroneous discovery ruling, including the denial of discovery. *Montalvo v. Fourth Court of Appeals,* 917 S.W.2d 1, 2 (Tex.1995) (orig. proceeding); *Able Supply Co. v. Moye,* 898 S.W.2d 766, 772 (Tex.1995) (orig. proceeding); *Walker,* 827 S.W.2d at 843. In other words, mandamus will properly lie when the trial court has denied a party's discovery request for evidence that goes to the heart of his case. *Able Supply,* 898 S.W.2d at 772.

■ Essential to Buchanan's cause of action is the identity of the person who used the "spit cup" prior to her, whether Jane Doe, some other party, or Buchanan herself. Dr. Ross has affirmatively denied that the cup at issue was used by Jane Doe. Buchanan has sought the identity of Jane Doe to learn from her facts relevant to the issue of whether she used the cup, such as, the physical characteristics of the cup, whether she left any blood on the cup (Buchanan contends there was blood on the cup she used), and whether she saw Dr. Ross's assistant dispose of the cup after she used it. The information sought by Buchanan directly impacts her ability to demonstrate that Jane Doe was the party who used the same cup from which she drank. We find that Buchanan's inquiry into the identity of Jane Doe was reasonably calculated to lead to the discovery of admissible evidence. *See* Tex.R. Civ. P. 166b(2)(a). Because Buchanan has been denied the discovery of information that goes to the heart of her case, she does not have an adequate remedy by appeal. Therefore, mandamus will properly lie.

## V. Attorney's Fees and Costs

As a final matter, Buchanan argues that the trial court erred in failing to award her expenses, including attorney's fees, for the prosecution of her Motion to Compel Discovery and for Sanctions. Rule of Civil Procedure 215(1)(d), however, restricts the review of such orders to appeals from the final

judgment. *See* TEX.R. CIV. P. 215(1)(d). Therefore, we will not consider Buchanan's complaint.

We conclude the trial court's denial of Buchanan's Motion to Compel Discovery was a clear abuse of discretion that left Buchanan with no adequate remedy by appeal. Therefore, mandamus is an appropriate remedy. We are confident that the trial court will promptly set aside its order denying Buchanan's motion and will enter an alternative order allowing Buchanan to learn Jane Doe's identity or provide some other suitable relief.[4] The writ will issue only upon its failure to do so.

The writ is conditionally granted.

---

4. This opinion should not read to mandate that the disclosure of Jane Doe's identity to Buchanan is the only solution to Buchanan's problem. In her mandamus petition, Buchanan asserts that she only wants to know Jane Doe's identity so that she can learn from her information about the cup and whether she had ever been told the reason she was tested for HIV. Deposing Jane Doe, or conducting some other form of discovery, in a manner that allows her to continue to conceal her identity may be a workable solution agreeable to both parties. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 161.010(e), .011(e).