**SANTA ROSA HEALTH CARE CORPORATION,**
**Petitioner,**

v.

**Linda Balderas GARCIA, Respondent.**

**No. 96–0945.**

Supreme Court of Texas.

Argued Nov. 5, 1997.

Decided March 13, 1998.

Cathy J. Sheehan, Jerry A. Gibson, San Antonio, for Petitioner.

George P. Powell, McAllen, for Respondent.

SPECTOR, Justice, delivered the opinion for a unanimous Court.

In this case, we consider whether Santa Rosa had a duty to notify Linda Garcia that she was at risk of contracting the HIV virus. The court of appeals held that Santa Rosa had a duty to notify Garcia and that a fact issue existed whether it breached that duty. *Garcia v. Santa Rosa Health Care Corp.*, 925 S.W.2d 372, 378 (Tex.App.—Corpus Christi 1996). We reverse and render judgment that Garcia take nothing.

I.

Adalberto Balderas met Linda Garcia in 1987, and the two married in March 1988. The couple divorced in 1990, after Balderas was diagnosed HIV-positive in December 1989. Balderas, a hemophiliac, had become infected with the HIV virus from injections of the blood-clotting agent Factor VIII he received in the 1970s and 1980s. He died of AIDS in 1993. While Garcia twice tested negative for HIV in 1989 and 1990, she has not been tested since for fear of testing positive.

Santa Rosa Health Care Corporation participates in the South Texas Regional Hemophilia Center. The Center provides facilities for administering Factor VIII to patients, and provides information about and assists patients with acquiring Factor VIII when patients cannot come to the Center. Balderas first came in contact with Santa Rosa in the late 1970s, when he sought Factor VIII after suffering an injury. Over the next few years, he contacted Santa Rosa for Factor VIII on two or three other occasions. Although Santa Rosa referred Balderas to other facilities to receive Factor VIII, he never received any Factor VIII directly from Santa Rosa. After April 1980, Balderas did not contact Santa Rosa about receiving any more Factor VIII. Santa Rosa never tested Balderas for HIV or AIDS, and Balderas did not know he had the virus until another doctor diagnosed him as having HIV in 1989. Balderas never claimed that Santa Rosa negligently infected him with the HIV virus.

At some point in the mid–1980s, Santa Rosa became aware that some of the nation's blood supply before the 1980s was contaminated with HIV and that Balderas may, therefore, have been exposed to the virus. However, Santa Rosa did not know Balderas was HIV-positive until he was diagnosed in December 1989. Between 1986 and 1989, Santa Rosa sent seven written notices to Balderas's home asking him to come in for annual appointments. These notices stated that Santa Rosa would test Balderas's blood for exposure to several viral illnesses, including HTLV–3 (HIV). The last six of these notices also indicated that Balderas should bring his wife or any steady girlfriend with him. Shortly before Balderas and Garcia were married, Santa Rosa called Balderas's residence to schedule an appointment. Although Garcia answered the call, Santa Rosa did not mention that she was at risk of contracting HIV from Balderas. Balderas never attended any of the annual appointments.

In 1991, Balderas and Garcia sued Santa Rosa for negligent, grossly negligent, reckless, or intentional breach of its duty to notify them of Balderas's possible exposure to HIV/AIDS. Balderas alleged that Santa Rosa in all likelihood knew that he was HIV-positive and that his life could have been extended had he known to seek medical attention at the time Santa Rosa became aware of this potential infection. Garcia alleged that Santa Rosa's negligent failure to notify her of Balderas's potential condition exposed her to the virus and caused her emotional distress. *See generally* Lauren J. Camillo, Comment, *Adding Fuel to the Fire: Realistic Fears or Unrealistic Damages in AIDS Phobia Suits?*, 35 S. Tex. L.Rev. 331 (1994) (discussing whether the simple fear of exposure to AIDS, absent an HIV-positive test result, is compensable).

Santa Rosa moved for summary judgment on the grounds that it breached no duty to notify the plaintiffs of Balderas's possible exposure to HIV, and that the claims nevertheless were barred by the statute of limita-

tions. The trial court granted Santa Rosa's motion on all claims, and Garcia appealed.[1]

The court of appeals reversed, holding that Santa Rosa owed a duty to notify Garcia and that a fact issue existed whether Santa Rosa had reasonably warned Balderas and Garcia of the possible exposure to HIV. 925 S.W.2d at 377–78.

## II.

The issue we must decide is whether Santa Rosa had a duty to notify Garcia that she was at risk of exposure to the HIV virus from contact with Balderas. This case is governed by the applicable statute.

### A. The 1987 Act

In 1983, the Legislature enacted the Communicable Disease Prevention and Control Act (CDPCA). Act of May 13, 1983, 68th Leg., R.S., ch. 255, 1983 Tex. Gen. Laws 1116. The Act's purpose was to prevent and control the spread of communicable diseases in Texas by implementing reporting requirements, testing guidelines, and other measures. Four years later, the Legislature added sections specifically covering HIV and AIDS. *See* Act of June 1, 1987, 70th Leg., R.S., ch. 543, 1987 Tex. Gen. Laws 2176, 2185.

To protect confidentiality, the Legislature listed in the Act the persons to whom an HIV or AIDS "test result" could be disclosed. Tex.Rev.Civ. Stat. art. 4419b–1, § 9.03 (repealed and recodified Sept. 1, 1989) (current version at Tex. Health & Safety Code § 81.103); *id.* § 9.03(a) ("A test result is confidential."). The Act defined "test result" as "*any statement or assertion* that any identifiable individual is positive, negative, *at risk*, ... or any other statement that indicates that an identifiable individual has or has not been tested for AIDS or HIV infection...." Tex.Rev.Civ. Stat. art. 4419b–1, § 9.01(5) (repealed and recodified Sept. 1, 1989) (current version at Tex. Health & Safety Code § 81.101(5)) (emphasis ours).

In her original petition, Garcia claimed that Santa Rosa "failed to advise

---

1. After Balderas died in 1993, his estate voluntarily dismissed all claims made on his behalf.

As such, only Garcia's failure-to-notify claim is before this Court.

[her] . . . of the possibility of the HIV infection." If Santa Rosa had advised Garcia that she could possibly be exposed to the HIV virus by contact with Balderas, the notice logically would have had to include a statement or assertion that Balderas was at risk of having the virus, or that he had not yet been tested for the virus. Either way, the notice falls within the statutory definition of a test result. Therefore, we must next consider whether Santa Rosa could lawfully have released Balderas's test results to Garcia.

■ The 1987 version of the statute comprehensively listed those persons to whom test results could be released. TEX.REV.CIV. STAT. art. 4419b–1, § 9.03. The only subsection arguably applicable to Garcia is section 9.03(7), regarding the spouse of the person tested.[2] A test result could be released to the spouse of a person tested only if "the person tests positive for AIDS or HIV infection. . . ." *Id.* § 9.03(b)(7). The record is clear that, in spite of its repeated efforts to set up appointments with Balderas to do so, Santa Rosa never tested Balderas for the HIV virus. As Santa Rosa had not tested Balderas for HIV, and therefore did not know whether he had tested positive or not, it was prohibited from notifying Garcia that she was at risk. In fact, if Santa Rosa had released the results to Garcia, it would have been subject to civil or criminal sanctions. *See id.* §§ 9.04, 9.06.

Moreover, section 9.03(7) explicitly stated that, "[t]his subdivision does not provide a duty to notify the spouse, and a cause of action does not arise under this subdivision for the failure to make that notification." *Id.* § 9.03(7). Clearly, then, under the 1987 version of the Act, Santa Rosa had no duty to notify Garcia that she was at risk of contracting the HIV virus from Balderas.

### B. The 1989 Act

In 1989, the Legislature repealed the CDPCA and re-enacted it as part of the Texas Health and Safety Code. Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2305. Section 81.101(5) (for-

mer section 9.01(5)) now defines "test result" as "*any statement* that indicates that an identifiable individual has or has not been tested for AIDS or HIV infection . . ., including a statement or assertion that the individual is positive, negative, [or] *at risk* . . ." TEX. HEALTH & SAFETY CODE § 81.101(5) (emphasis ours). This definition is substantially the same as the old version; therefore, any similar notice to Garcia would still be a test result.

Former section 9.03 was also repealed and re-enacted with some amendments as section 81.103. New section 81.103(a) states that, "A test result is confidential. A person that possesses or has knowledge of a test result may not release or disclose the test result or allow the test result to become known except as provided by this section." TEX. HEALTH & SAFETY CODE § 81.103(a). Like former section 9.03(b), new section 81.103(b) lists the only persons to whom tests results may be released. *Id.* § 81.103(b). While the new section no longer precludes a cause of action for failure to notify a spouse, it maintains the requirement that before the results can be released to a spouse, the patient must first test positive. *Id.* § 81.103(b)(7) ("A test result may be released to: . . . (7) the spouse of the person tested *if the person tests positive for AIDS or HIV infection,* antibodies to HIV, or infection with any other probable causative agent of AIDS.") (emphasis ours).

■ Balderas was diagnosed HIV-positive in December 1989. Before this date, neither he nor Santa Rosa knew he was HIV-positive. The record is clear that all seven notices from Santa Rosa to Balderas urging him to come in for annual evaluation and testing were sent before December 1989. The statute is clear that before test results can be released to a spouse, the patient must have tested positive. Because Balderas had not tested positive by the time the notices were sent, Garcia was not within a class of persons to whom his test results could have been released. Finally, as Santa Rosa logically could not notify Garcia that she was at

---

**2.** Although Balderas and Garcia did not marry until 1988, after Santa Rosa had sent most of its notices to Balderas, we will assume for this anal-

ysis that Garcia was Balderas's spouse when the notices were sent.

risk of contracting the HIV virus from Balderas without informing her of his test results, under the 1989 statute Santa Rosa had no duty to, and in fact was prohibited from, giving Garcia the notice to which she claims she was entitled. *See id.* § 81.103(j) (stating possible criminal liability for wrongful release or disclosure of test results).

 Finally, in the trial court, Garcia argued that Santa Rosa had a common-law duty to notify her that she was at risk of contracting the HIV virus from Balderas. As we have stated, any such notice would violate the statute. Accordingly, we hold that Santa Rosa had no common-law duty to notify Garcia that she was at risk of contracting HIV from Balderas.

### III.

We hold that Santa Rosa had no statutory or common-law duty to notify Garcia that she was at risk of contracting the HIV virus from Balderas. Accordingly, we reverse the judgment of the court of appeals and render judgment that Garcia take nothing.