NEW TIMES, INC., Dallas Observer, L.P., and J.D. Sparks, Appellants

v.

John DOE, Appellee.

No. 05–05–00705–CV.

Court of Appeals of Texas, Dallas.

Jan. 24, 2006.

James A. Hemphill, Graves, Dougherty, Hearon & Moody, P.C., Austin, for Appellant.

James N. Henry and Edward P. Perrin, Jr., Hallett & Perrin, Dallas, for Appellee.

Before Justices WHITTINGTON, WRIGHT, and MAZZANT.

## OPINION

Opinion by Justice WHITTINGTON.

In this accelerated interlocutory appeal, we decide whether appellants may be held liable for damages under the Texas Communicable Disease Prevention and Control Act for reporting that an individual is HIV-positive. *See* Chapter 81, TEX. HEALTH & SAFETY CODE ANN. (Vernon 2001 & Supp.2005). While the confidentiality provisions of the Act serve an important public interest, we conclude they do not extend to the circumstances presented here and, therefore, the trial judge erred in denying appellants' motion for summary judgment. We reverse the trial court's judgment and render judgment that appellee take nothing.

BACKGROUND

Appellants New Times, Inc., Dallas Observer, L.P., and J.D. Sparks bring this appeal pursuant to section 51.014(a)(6) of the Texas Civil Practice and Remedies Code, asserting the trial judge erred in denying their motion for summary judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(6) (Vernon Supp.2005) (person may appeal interlocutory order of district court denying motion for summary judgment based on defense by member of print media arising under free speech or free press clause of United States or Texas Constitution or libel statute). Certain facts were established by the summary judgment evidence. The December 4, 2003 edition of the *Dallas Observer* newspaper included an article by J.D. Sparks entitled *Fallen Angel.* The focus of the article was alleged fiscal mismanagement and rifts among former and current leaders at the Dallas Cathedral of Hope church. One allegation discussed in the article was an attempt by church officials to include unpaid volunteers on the church's insurance. In the article, Sparks wrote that Jean Morris, a former director of administration at the church, "alleges ... senior church leaders ... asked her to add volunteers such as [appellee],[1] who was HIV-positive, to the church's insurance policy even though only full-time paid employees were eligible."

Sparks did not contact appellee for comment before the article was published. Sparks assumed, without confirming with appellee, that his HIV status was not confidential. Although Sparks did not know it at the time she researched and wrote the article, appellee's HIV status had in fact been published due to his participation in the musical group "Positive Voices." The printed material included with one of the group's recordings states, "Positive Voices

---

1. The article reported appellee's name in the    quoted sentence.

do not conceal the fact that every vocalist in this chorus, its Accompanist and its Director are all HIV + ." Appellee is identified by name as the accompanist, and his picture is included. This recording and others identifying appellee were advertised and made available for sale on the internet, and the group performed publicly in Texas and at least one other state.

Appellee sued appellants for wrongful disclosure of test results in violation of the Texas Communicable Disease Prevention and Control Act, invasion of privacy, intentional infliction of emotional distress, and civil conspiracy. In an amended pleading, appellee asserted only the statutory violation and the civil conspiracy claim. Appellants moved for summary judgment on five grounds: (i) they did not release or disclose a test result in violation of the Act; (ii) punishment for the publication of true, non-private, lawfully-obtained information, which would not further a state interest of the highest order, would violate the Texas and United States constitutions; (iii) they did not act negligently and thus cannot be held liable under the Act; (iv) appellee's conspiracy claim cannot be sustained because there is no liability for any substantive claim; and (v) appellee's damages claim is contrary to the language and intent of the Act. We conclude appellants were entitled to judgment as a matter of law.

## STANDARD OF REVIEW

Although this is an interlocutory appeal under section 51.014(a)(6) of the Texas Civil Practice and Remedies Code, the parties do not contend our review of the issues presented is limited. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(6); *K–Six Television, Inc. v. Santiago*, 75 S.W.3d 91, 96 (Tex.App.-San Antonio 2002, no pet.) (where media defendant's motion for summary judgment relied in part on law of libel under statute included in section 51.014(a)(6), entirety of trial court's orders were appealable under section 51.014(a)(6)). We review a summary judgment de novo to determine whether a party has established its right to summary judgment as a matter of law. *See Dallas Cent. Appraisal Dist. v. Cunningham*, 161 S.W.3d 293, 295 (Tex.App.-Dallas 2005, no pet.). A party moving for a traditional summary judgment must show no material fact issue exists and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Cunningham*, 161 S.W.3d at 295.

We review matters of statutory construction de novo. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003); *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 252–53 (Tex.App.-Dallas 2005, no pet.). In construing a statute, our objective is to determine and give effect to the legislature's intent. *Nauslar*, 170 S.W.3d at 253. If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning. *Nauslar*, 170 S.W.3d at 253. We begin by examining the exact wording and apply the tenet that the legislature chooses its words carefully and means what it says. *See Nauslar*, 170 S.W.3d at 253. We determine legislative intent from the entire act and not just its isolated portions. *Nauslar*, 170 S.W.3d at 253. In determining the meaning of a statute, a court must consider the entire act, its nature and object, and the consequences that would follow from each construction. *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991). Interpretations of statutes which would produce absurd results are to be avoided. *Sharp*, 815 S.W.2d at 249. If possible, we interpret a statute in a manner that renders it constitutional. *FM Prop. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex.2000). *See generally* Code Construction Act, Chapter 311, TEX. GOV'T CODE ANN. (Vernon 2005) (presump-

tions and matters to be considered in construing statute).

### DISCUSSION

Appellee sued appellants for wrongful disclosure of test results, contending appellants released or disclosed a test result in violation of the Texas Health and Safety Code. The sections at issue provide:

§ 81.101(5) "Test result" means any statement that indicates that an identifiable individual has or has not been tested for AIDS or HIV infection, antibodies to HIV, or infection with any other probable causative agent of AIDS, including a statement or assertion that the individual is positive, negative, at risk, or has or does not have a certain level of antigen or antibody.

\* \* \*

§ 81.103(a) A test result is confidential. A person that possesses or has knowledge of a test result may not release or disclose the test result or allow the test result to become known except as provided by this section.

\* \* \*

§ 81.104(b) A person who . . . is found in a civil action to have negligently released or disclosed a test result or allowed a test result to become known in violation of Section 81.103 is liable for:

(1) actual damages;

(2) a civil penalty of not more than $5,000; and

(3) court costs and reasonable attorney's fees incurred by the person bringing the action.

Tex. Health & Safety Code Ann. §§ 81.101–.104 (Vernon 2005).

Appellee argues appellants' statement in the article that he was "HIV positive" constitutes the "release or disclosure" of a "test result" in violation of Chapter 81. It is undisputed that appellants did not know whether appellee had or had not been tested for HIV infection and did not possess or have knowledge of the results of any actual medical test on appellee. Nevertheless, appellee argues that, under the language of the statute, a mere statement that a person is HIV positive constitutes disclosure of a test result. Appellee further argues that under section 81.104(d), he may recover the statutory civil penalty for each person who read the article, a figure he estimates to be as high as 300,-000 people. *See* Tex. Health & Safety Code Ann. § 81.104(d) (each release or disclosure made in violation of subchapter constitutes separate offense). Appellee therefore claims he could be entitled to recover over one billion dollars, "merely a mathematical calculation" under the statute, for appellants' publication of a single article. Under this interpretation, for a wilful violation, damages could reach three billion dollars. *See* Tex. Health & Safety Code Ann. § 81.104(c)(2) (civil penalty of not less than $5,000 nor more than $10,000 for wilful disclosure of test result).

We begin with the statutory definition of "test result." While we agree with appellee that the statutory definition of "test result" is broad and has been interpreted broadly, *see, e.g.*, *Santa Rosa Health Care Corp. v. Garcia*, 964 S.W.2d 940, 943 (Tex. 1998) (statement by health care provider that person could be "at risk" of HIV infection falls within statutory definition of test result), the statute requires that the person to be held liable possess or have knowledge of a test result and must release or disclose the test result. *See* Tex. Health & Safety Code Ann. § 81.103(a) ("A person that possesses or has knowledge of a test result may not release or disclose the test result or allow the test result to

become known except as provided by this section.").

The purpose of the original Texas Communicable Disease Prevention and Control Act (now re-enacted as part of the Texas Health and Safety Code) was "to prevent and control the spread of communicable diseases in Texas by implementing reporting requirements, testing guidelines, and other measures." *Garcia*, 964 S.W.2d at 942. The Texas Health and Safety Code "sets out the circumstances under which a person might be required to undergo AIDS or HIV testing." *J.K. & Susie Wadley Research Inst. & Blood Bank v. Whittington*, 843 S.W.2d 77, 84 (Tex.App.-Dallas 1992, orig. proceeding); *see* TEX. HEALTH & SAFETY CODE ANN. § 81.102(a) (person may "require another person to undergo a medical procedure or test designed to determine or help determine if a person has AIDS or HIV infection"); *see also Gulf Coast Regional Blood Ctr. v. Houston*, 745 S.W.2d 557, 560 (Tex.App.-Fort Worth 1988, orig. proceeding) (noting that "[t]he Act is merely a general health regulation and states guidelines for conducting AIDS tests"). The statute provides that such test results are confidential, TEX. HEALTH & SAFETY CODE ANN. § 81.103(a), and provides both civil and criminal penalties for violations of the Act. *See generally* TEX. HEALTH & SAFETY CODE ANN. §§ 81.103, 81.104.

Our research reveals the only Texas Supreme Court case to discuss the meaning of "test result" under the Act is *Garcia*. In that case, Balderas, an HIV-positive hemophiliac, and his wife, Garcia, sued Santa Rosa Health Care Corporation for negligent, grossly negligent, reckless, or intentional breach of its duty to notify them of Balderas's possible exposure to HIV/AIDS. The supreme court concluded a medical provider did not have a duty to notify a spouse that she was at risk of exposure to the HIV virus. *Garcia*, 964 S.W.2d at 942. The court noted that, under the language of the Act, a spouse could not be notified until the patient tested positive for AIDS or HIV. The court stated:

> The Act defined a "test result" as *"any statement or assertion* that any identifiable individual is positive, negative, *at risk*, ... or any other statement that indicates that an identifiable individual has or has not been tested for AIDS or HIV infection...." ... If Santa Rosa had advised Garcia that she could possibly be exposed to the HIV virus by contact with Balderas, the notice logically would have had to include a statement or assertion that Balderas was at risk of having the virus, or that he had not yet been tested for the virus. Either way, the notice falls within the statutory definition of a test result.

*Garcia*, 964 S.W.2d at 942–43 (emphasis in original). Thus, Santa Rosa was prohibited from notifying Garcia she was at risk, and in fact would have been subject to sanctions under the Act for doing so. *Garcia*, 964 S.W.2d at 943.

*Garcia*, however, is distinguishable from this case. Santa Rosa was aware Balderas was at risk of AIDS or HIV infection because it had been involved, although minimally, in Balderas's medical care. Santa Rosa gave Balderas referrals to other facilities to receive injections of a blood-clotting agent used to treat his hemophilia. Santa Rosa sent notices to Balderas encouraging him to be tested, and knew—at least as far as its own records—Balderas had not been tested. *See Garcia*, 964 S.W.2d at 943 ("The record is clear that, in spite of its repeated efforts to set up appointments with Balderas to do so, Santa Rosa never tested Balderas for the HIV virus."). In contrast, appellants had no such knowledge, had no connection to ap-

pellee's medical care, and were not seeking to require appellee to be tested under section 81.102. While the *Garcia* court's interpretation of "test results" was very broad, as there was no actual "test" taken yet from which there were "results," still Santa Rosa had reason to know Balderas was at risk of HIV infection from his previous medical treatment. *See Garcia,* 964 S.W.2d at 942. Appellee's interpretation of the statute, however, would extend this broad reading even further to situations completely unrelated to any testing under subchapter F of Chapter 81 of the Act. No court has so extended the Act, and we decline to do so here. *See, e.g., Buchanan v. Mayfield,* 925 S.W.2d 135, 139–140 (Tex. App.-Waco 1996, orig. proceeding) (confidentiality provisions of Act did not apply to allow dentist to keep patient's identity secret in action by another patient claiming that due to dentist's negligence she drank from same cup as first patient).

Appellee argues the persons liable under the Act for disclosing "test results" cannot be limited to those with any special access to medical records, because a statute was already in place restricting disclosure of actual blood tests or other lab reports when the Act was passed. *See* Tex. Occ. Code Ann. § 159.002 (Vernon 2004) (entitled "Confidential Communications"). He argues any such limitation on the language of the Act would render the Act's confidentiality provisions meaningless, and cites *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1988), for the proposition that we must give effect to all words of a statute and not treat any statutory language as surplusage. The two statutory provisions differ. The Occupations Code provision begins with "a communication between a physician and a patient" or "a record of the identity, diagnosis, evaluation or treatment of a patient by a physician" and provides that a person who receives a confidential communication or record may not disclose the information. *See* Tex. Occ. Code Ann. §§ 159.002(a), (b), and (c). The statutory language of the Act at issue here is broader, not limited to physician-patient communications or tangible records. *See* Tex. Health & Safety Code Ann. § 81.101(5) ("test result" is "any statement that indicates that an identifiable individual has or has not been tested"). This broader language does not become surplusage, however, by reading it in its context in the section of the Act imposing liability upon "[a] person that possesses or has knowledge of a test result" who releases or discloses the result or makes it known. Tex. Health & Safety Code Ann. § 81.103(a).

Our holding is limited to the circumstances of this case, in which appellants did not possess or have knowledge that appellee had or had not been tested for AIDS or HIV infection, and had no knowledge of or connection to appellee's medical care, history, records, or other health or medical information. *See* Tex. Health & Safety Code Ann. § 81.101(5) (" 'test result' means any statement that indicates that an identifiable individual has or has not been tested for AIDS or HIV infection ..., including a statement or assertion that the individual is positive, negative, at risk, or has or does not have a certain level of antigen or antibody"); § 81.103(a) ("a person that possesses or has knowledge of a test result may not release or disclose the test result or allow the test result to become known ...").

Because appellee's claim under the Act fails as a matter of law, summary judgment was also proper on his conspiracy claim. *See Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996) (defendant's liability for conspiracy depends on participation in some underlying tort for which plaintiff seeks to hold at least one of named defendants liable). Appellants established there

was no genuine issue as to any material fact and they were entitled to judgment as a matter of law on the issues expressly set out in their motion. Therefore, the trial judge erred in denying appellants' motion for summary judgment. *See* Tex.R. Civ. P. 166a(c). We reverse the judgment of the trial court and render judgment that appellee take nothing.